OPINION
{¶ 1} Defendant-appellant, Hyatt B. Shirkey ("appellant"), appeals from a judgment of the Franklin County Municipal Court finding him guilty, following a one-day bench trial on July 29, 2008, of failing to yield the right-of-way to a public safety vehicle in violation of Columbus City Code ("C.C.") 2131.21(a), a fourth-degree misdemeanor. *Page 2 
Because the trial court's verdict is supported by sufficient evidence and is not against the manifest weight of the evidence, we affirm.
 {¶ 2} At trial, Columbus Police Officer Andrew Ross testified on behalf of plaintiff-appellee, city of Columbus ("appellee"). Officer Ross stated that at approximately 11:30 p.m. on June 17, 2008, he was on duty and standing outside his police cruiser in a parking lot on Cleveland Avenue after having completed an unrelated traffic stop. A Columbus Division of Fire ambulance and fire engine passed him traveling southbound on Cleveland Avenue; both vehicles had their emergency lights and sirens activated. Officer Ross directed his attention toward the emergency vehicles to observe whether motorists traveling on Cleveland Avenue would yield the right-of-way.
 {¶ 3} According to Officer Ross, appellant was traveling northbound on Cleveland Avenue in the right curb lane behind a van. The van stopped and yielded the right-of-way to the ambulance. After the ambulance passed appellant's vehicle, appellant abruptly changed lanes into the left lane. Appellant's maneuver caused the fire engine to swerve into the right lane to avoid colliding with appellant's vehicle.
 {¶ 4} Thereafter, Officer Ross initiated a traffic stop of appellant's vehicle. Appellant told Officer Ross that he saw the ambulance but did not see the fire engine. Officer Ross cited appellant with failure to yield the right-of-way to a public safety vehicle in violation of C.C. 2131.21(a).
 {¶ 5} Officer Ross testified that no adverse weather conditions prevented the lights on both public safety vehicles from being viewable at a distance of 500 feet. He further averred that there was no reason appellant would not have been able to see both *Page 3 
of the emergency vehicles. He also testified that the other motorists traveling on Cleveland Avenue yielded the right-of-way to both the ambulance and fire engine.
 {¶ 6} On cross-examination, Officer Ross admitted that he could not remember the number and placement of street lights in the area. Further, when asked whether a motorist traveling northbound behind a van would have been able to see more than one emergency vehicle traveling southbound, Officer Ross replied that he "[could not] speak as to what the defendant saw that evening." (Tr. 21.)
 {¶ 7} On redirect, Officer Ross testified that the ambulance and fire engine passed by him before they reached appellant's vehicle and that he had no difficulty seeing or hearing both vehicles. He further averred that the fire engine was traveling "[n]o more than a few seconds" behind the ambulance. (Tr. 25.) He also testified that all motorists traveling on Cleveland Avenue, including appellant, had their headlights illuminated.[1]
 {¶ 8} At the close of the city's case-in-chief, appellant moved for judgment of acquittal pursuant to Crim. R. 29, arguing that the city had failed to prove the essential elements of C.C. 2131.21(a). Following argument by both parties, the trial court overruled appellant's motion.
 {¶ 9} Appellant's passenger and girlfriend, Stephanie Noel, testified on behalf of appellant. Noel confirmed that appellant was driving northbound on Cleveland Avenue *Page 4 
behind a van. According to Noel, appellant stopped behind the van because they observed the ambulance traveling southbound and heard its siren. The van blocked their view of the entire street, and they could not see or hear anything in front of them because they had the windows rolled up and the air conditioner and radio on. After the ambulance passed, appellant waited approximately 30 seconds, checked for oncoming traffic, and then proceeded around the van. Noel testified that when appellant's vehicle was parallel to the van, a fire engine "came up out of nowhere." (Tr. 34.) As soon as appellant saw the fire engine, he pulled his vehicle in front of the van and stopped. Noel testified that they did not hear the fire engine's siren until they had driven around the van. After the fire engine passed and the other motorists that had yielded to the emergency vehicles proceeded, appellant continued on his way. Officer Ross stopped appellant, informed him that he had nearly caused an accident by failing to yield to the fire engine, and cited him for a violation of C.C. 2131.21(a).
 {¶ 10} Appellant testified on his own behalf. According to appellant, he and Noel were traveling in the left northbound lane of Cleveland Avenue. As he was driving, appellant noticed a police cruiser parked in a nearby parking lot. A van traveling directly in front of appellant moved "kind of diagonal" into the right curb lane, partially blocking his view. (Tr. 47.) When the van moved, appellant saw the ambulance and heard its siren; he immediately pulled over to the curb lane and stopped "rather close" behind the van. (Tr. 48.) He sat for "over a minute," conversing with Noel about the police officer having just written a ticket to another motorist. (Tr. 48.) After the ambulance passed, he asked Noel, who had a slightly better view due to the curvature of the street, if she saw any oncoming vehicles. Noel said she did not see any oncoming traffic. Appellant looked for *Page 5 
himself, and like Noel, saw no approaching vehicles. He then pulled around the van, which remained stopped in the right lane. Appellant surmised that the van remained immobile because the driver was not paying attention. After passing the van, appellant saw the lights of the fire engine; however, he could not hear the siren. He immediately pulled into the right lane and stopped directly in front of the van. After the fire engine passed, he continued northbound on Cleveland Avenue. Officer Ross stopped him and told him that he observed the incident from about 25 feet away and that appellant had almost caused an accident by failing to yield to the fire engine. Appellant told Officer Ross that he saw and heard the ambulance approaching, but neither saw nor heard the fire engine. Officer Ross then cited him with a violation of C.C. 2131.21(a).
 {¶ 11} Appellant further testified that he "[a]bsolutely" yielded the right-of-way to the ambulance and that he yielded the right-of-way to the fire engine "[a]s soon as [he] perceived it." (Tr. 52.) He further testified that he calculated the distance between his vehicle and Officer Ross's location in the parking lot as 540 feet, not 25 feet. He also identified a photograph he took of the area after the incident (Appellant's Exhibit A), claiming that it depicted the view Officer Ross would have had of his vehicle at the time of the offense. Appellant denied that his driving caused the fire engine to swerve to the right to avoid colliding with his vehicle.
 {¶ 12} Following appellant's testimony, the defense rested. Appellee recalled Officer Ross as a rebuttal witness. Officer Ross testified that he was standing outside his cruiser at the time of the incident and that nothing obstructed his view of appellant's vehicle. He reiterated that both the ambulance and the fire engine had their emergency lights and sirens activated when they passed him. He further testified that the emergency *Page 6 
vehicles were traveling less than 30 seconds apart. He also averred that appellant did not pull over to the curb lane and stop after he pulled around the van.
 {¶ 13} Following Officer Ross's rebuttal testimony, appellant renewed his Crim. R. 29 motion. The trial court again overruled the motion. Thereafter, the trial court indicated that it would issue its ruling from the bench. To that end, the court noted Officer Ross's testimony that the fire engine had its lights and siren activated. The court further noted that Noel did not expressly testify that she did not hear a siren; rather, she stated that because the windows were rolled up and the air conditioner and radio were on, she was unable to hear what was going on outside appellant's car. The court rejected appellant's testimony as to the 540-foot distance between Officer Ross and appellant's vehicle, citing appellant's testimony that he was able to observe Officer Ross issue a citation to another motorist. Following this analysis, the trial court found appellant guilty. Counsel for appellant noted the potential penalties for commission of a fourth-degree misdemeanor, i.e., up to 30 days in jail and a fine of up to $250. Noting that appellant's previous record consisted only of a speeding ticket, the trial court indicated that it would impose only a $125 fine.
 {¶ 14} In its judgment entry filed the next day, July 30, 2008, the trial court found that appellee had established that the emergency vehicles at issue were traveling with activated lights and sirens and that no atmospheric conditions impeded any motorists' ability to see both vehicles. The court further noted that Officer Ross testified that appellant did not pull over to the right curb lane while the fire engine passed. The trial court acknowledged appellant's testimony that he yielded to the ambulance but after waiting for a minute he chose to drive around the van because he did not hear the fire *Page 7 
engine's siren and he believed the driver of the van remained immobile due to the driver's inattention. The court also acknowledged appellant's testimony that he moved back to the curb lane immediately after becoming aware of the fire engine.
 {¶ 15} The court further found that the uncontested testimony that all other motorists yielded to both emergency vehicles undercut appellant's claim that the curvature of the street hindered his ability to see the emergency vehicles approaching. The court also rejected appellant's argument that Officer Ross's view of the incident was impeded by a physical structure between his police cruiser and appellant's vehicle, citing Officer Ross's testimony that he was outside his cruiser when he observed the offense and appellant's own testimony that he observed Officer Ross write a ticket to another motorist. The court cited Noel's testimony that neither she nor appellant could see or hear what was happening because they had the windows rolled up and the air conditioning and radio on as the "most informative information provided from the defense." (July 30, 2008 entry, 2.)
 {¶ 16} Based upon this analysis, the court found that appellee met its legal burden and, accordingly, found appellant guilty. The court imposed a fine of $125 and assessed costs against appellant.
 {¶ 17} From this judgment, appellant appeals, advancing a single assignment of error, as follows:
 The trial court erred when it did not hold the prosecution to its burden to prove, beyond a reasonable doubt, that either: the defendant saw or heard the emergency vehicle, or, that he did not exercise of ordinary care under the criminal negligence standard. *Page 8 
 {¶ 18} Appellant essentially contends that neither sufficient evidence nor the manifest weight of the evidence support the trial court's verdict finding him guilty of failure to yield the right-of-way to a public safety vehicle. We disagree.
 {¶ 19} "The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different."State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52, paragraph two of the syllabus. In reviewing a claim that a criminal conviction is against the sufficiency of the evidence, an appellate court must determine whether the evidence presented at trial, viewed in a light most favorable to the prosecution, would allow a rational trier of fact to find the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. In other words, "[a] challenge to the sufficiency of evidence supporting a conviction requires a court to determine whether the [prosecution] has met its burden of production at trial. On review for sufficiency, courts are to assess not whether the [prosecution's] evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." Thompkins, at 390 (Cook, J., concurring). Whether the evidence is legally sufficient to sustain a verdict is a question of law. Id. at 386.
 {¶ 20} "Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence." Id. at 387. As noted previously, a challenge to the weight of the evidence is analytically distinct from a challenge to the sufficiency of the evidence. *Page 9 
 {¶ 21} In determining whether a conviction is against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trial court clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Thompkins, at 387, citing State v. Martin (1983),20 Ohio App.3d 172, 175. The determination of witness credibility and the weight to be afforded to that testimony is solely within the province of the trier of fact who observed the witnesses in person.State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 22} C.C. 2131.21(a) provides, in pertinent part, as follows:
 Upon the approach of a public safety vehicle * * * equipped with at least one flashing, rotating, or oscillating light visible under normal atmospheric conditions from a distance of five hundred (500) feet to the front of the vehicle and the driver is giving an audible signal by siren, exhaust whistle, or bell, no driver of any other vehicle shall fail to yield the right-of-way, immediately drive if practical to a position parallel to, and as close as possible to, the right edge or curb of the street or highway clear of any intersection, and stop and remain in that position until the public safety vehicle has passed, except when otherwise directed by a police officer.
 {¶ 23} C.C. 2131.21(a) is identical to R.C. 4511.45(A)(1). As such, our analysis includes the relevant case law interpreting both the ordinance and the statute.
 {¶ 24} Appellant contends that the trial court erroneously found him guilty because appellee did not prove beyond a reasonable doubt that he either saw the fire engine's emergency lights or heard its emergency siren or that he should have, in the exercise of ordinary care, seen the lights or heard the siren. Appellant relies upon his and Noel's *Page 10 
testimony that neither of them saw the lights or heard the siren, as well as Noel's testimony that both the radio and air conditioner were on and the car windows were up.
 {¶ 25} Appellee urges this court to follow State v. Bethel (July 24, 1979), 10th Dist. No. 79AP-207, where we rejected the same argument advanced by appellant. There, Bethel was charged with C.C. 2131.21(a). At trial, a firefighter testified that he was on an emergency run in an ambulance with its emergency lights and sirens operating when Bethel collided with the emergency vehicle at an intersection. Another firefighter testified that he was standing outside a fire house and observed the ambulance for two to three city blocks, 1000 to 1500 feet away, with its audible and visual signals operating. Bethel presented testimony that the windows of his car were up, that both the heater and radio were on, and that neither he nor the other occupants of his car either saw the emergency lights or heard the emergency siren. Upon this evidence, the trial court found Bethel guilty.
 {¶ 26} On appeal, Bethel argued that the city was required to prove that he saw the emergency lights or heard the siren and, citing the evidence he adduced, argued that the city had failed to do so. We disagreed, stating that C.C. 2131.21(a) did not require the city to prove that Bethel either heard the siren or saw the lights; rather, the ordinance required the city to prove that there was an approaching public safety vehicle; that it was equipped with at least one flashing, rotating or oscillating light visible under normal atmospheric conditions from a distance of 500 feet to the front of such vehicle; and that the driver of the public safety vehicle provided an audible signal by siren, exhaust whistle or bell. This court affirmed Bethel's conviction, finding that the city had presented all the evidence required to establish a violation of C.C. 2131.21(a). *Page 11 
 {¶ 27} Appellee maintains that Bethel properly interprets C.C. 2131.21(a) as a strict liability ordinance. In contrast, appellant contends appellee was required to prove beyond a reasonable doubt that he was criminally negligent. Appellant cites Parton v. Weilnau (1959),169 Ohio St. 145, in support of his contention. In Parton, a police officer riding with another officer who was driving a police cruiser with its red lights and siren activated filed a negligence action against the decedent-driver of another vehicle. Construing R.C. 4511.45(A)(1), the Supreme Court of Ohio held that "[a] driver of an automobile is not negligent in failing to heed the siren or flasher signals on a police car on an emergency run where there is no evidence tending to prove that he heard the siren or saw the signals and no evidence that will support a reasonable conclusion that he should, in the exercise of ordinary care, have heard or seen them." Id., paragraph two of the syllabus. Thus, the issue here resolves to whether we should follow Bethel or Parton.
 {¶ 28} For the following reasons, we adhere to Bethel's interpretation of C.C. 2131.21(a) as a strict liability ordinance. Initially, we note that Parton is distinguishable, as it involved a civil action for damages rather than a criminal offense. Further, in Parton, the police cruiser entered the intersection against the traffic signal and failed to slow down and proceed cautiously through the intersection, thereby proceeding in an unlawful manner. Parton at 157. In the instant case, appellant was not at an intersection, was not driving perpendicular to the emergency vehicles, and admittedly saw the first of the two public safety vehicles.
 {¶ 29} Moreover, we believe Bethel properly interpreted C.C. 2131.21(a) as a strict liability ordinance. C.C. 2131.21(a) does not specify what degree of culpability is required for an individual to be found guilty of violating the ordinance. Pursuant to C.C. *Page 12 
2301.21(B), when a section defining an offense does not specify any degree of culpability and plainly indicates a purpose to impose strict criminal liability for conduct described in the section, "culpability is not required for a person to be guilty of the offense." The Supreme Court of Ohio has suggested that the language of a statute (or ordinance) and its purpose and policy considerations are the relevant factors to be considered when construing whether the legislative body that enacted the law intended to impose strict liability. State v.Rife (June 13, 2000), 10th Dist. No. 99AP-981, citing State v.Schlosser (1997), 79 Ohio St.3d 329, 331-32.
 {¶ 30} C.C. 2131.21(a) was clearly enacted for the purpose of promoting the safety, health or well-being of the public. Public safety vehicles responding to emergency calls must be able to navigate through city streets unimpeded by other vehicles traveling in the area. C.C. 2131.21(a) clearly promotes this purpose, penalizing motorists who fail to yield the right-of-way to public safety vehicles responding to emergency calls with their lights and sirens activated. Statutes and ordinances enacted for the purpose of promoting the safety, health or well-being of the public are generally meant to be enforced under a strict liability standard. Rife, supra, citing Middletown v.Campbell (1990), 69 Ohio App.3d 411, 415.
 {¶ 31} In addition, the language of C.C. 2131.21(a) suggests that the city intended to impose strict criminal liability. As noted previously, the ordinance does not specify a culpable mental state. Further, the ordinance utilizes the phrase "no person shall." See Rife, supra (stating that "the Ohio Legislature's intent to impose strict criminal liability on a public welfare statute is established by the statute's failure to refer to any culpable mental state and its containing the format `no person shall'"). *Page 13 
 {¶ 32} Accordingly, the language of C.C. 2131.21(a) and its purpose and policy considerations lead us to conclude that the city intended to impose strict criminal liability on motorists who fail to yield the right-of-way to an approaching public safety vehicle equipped with at least one flashing, rotating or oscillating light visible under normal atmospheric conditions from a distance of 500 feet to the front of such vehicle and which driver of the public safety vehicle provides an audible signal by siren, exhaust whistle or bell. Accordingly, appellee was not required to prove that appellant was criminally negligent.
 {¶ 33} Finally, contrary to appellant's assertion, Bethel does not hold that evidence establishing that a defendant did not hear or see a public safety vehicle is an affirmative defense. This court's statement that "[i]f anything, the evidence that [Bethel] did not hear or see the emergency vehicle would be an affirmative defense, the burden of proof of which [Bethel] did not sustain" did not impact the outcome of the case and thus, constituted mere dicta.
 {¶ 34} In this case, if the evidence is construed in a light most favorable to appellee, a rational trier of fact could have found the essential elements of C.C. 2131.21(a) beyond a reasonable doubt. Officer Ross's testimony permitted a reasonable factfinder to believe that the fire engine approached appellant's vehicle with its emergency lights and sirens activated, that the lights on the fire engine were visible from a distance of 500 feet, and that appellant failed to stop and yield the right-of-way to the fire engine. Accordingly, sufficient evidence supports appellant's conviction.
 {¶ 35} Further, we cannot say that the trial court clearly lost its way in finding appellant guilty. In essence, appellant maintains that the trial court should have taken *Page 14 
into account the evidence he adduced, that is, that both the car heater and radio were on, and that neither he nor Noel either saw the fire engine's emergency lights or heard its emergency siren. This evidence relates to the negligence standard in Parton, and, as previously noted, we have elected to apply Bethel rather than Parton.
 {¶ 36} Appellant also maintains, in essence, that the trial court should have believed his version of the events of June 17, 2008. We acknowledge that the parties presented conflicting evidence at trial. For instance, both appellant and Noel testified that appellant immediately pulled his vehicle to the right lane and stopped upon seeing the fire engine. However, Officer Ross testified that after the fire engine swerved to avoid appellant's vehicle, appellant never stopped his vehicle and did not drive his vehicle to the right curb and remain stopped until the fire engine passed as required by C.C. 2131.21(a).
 {¶ 37} It is well-settled that a conviction is not against the manifest weight of the evidence simply because the trier of fact heard conflicting evidence and chose to believe the prosecution's evidence.State v. Gilliam (Aug. 12, 1998), 9th Dist. No. 97CA006757. Here, the trial court had the opportunity to view the witnesses' testimony and adjudge their credibility. It is well-settled that the trier of fact is in the best position to take into account inconsistencies, along with the witnesses' manner and demeanor, and determine the credibility of the witnesses. State v. Crisp, 10th Dist. No. 06AP-146, 2006-Ohio-5041, at ¶ 13. Based upon all the evidence, the trial court could reasonably conclude that appellant failed to yield the right-of-way to the fire engine in violation of C.C. 2131.21(a). Accordingly, the verdict is not against the manifest weight of the evidence. Appellant's assignment of error is overruled. *Page 15 
 {¶ 38} For the foregoing reasons, we overrule appellant's sole assignment of error and affirm the judgment of the Franklin County Municipal Court.
Judgment affirmed.
FRENCH, P.J., and KLATT, J., concur.
[1] The trial transcript indicates that Officer Ross prepared a diagram on a courtroom blackboard depicting the locations of his police cruiser, appellant's vehicle, the van, the ambulance, and the fire engine. Appellant has appended to his reply brief a map of the area upon which he has sketched what he purports to be a recreation of Officer Ross's diagram. However, items attached to an appellate brief are not part of the record in the trial court and may not be considered on appeal. State v. Booher (1988), 54 Ohio App.3d 1, 15. Accordingly, we will not consider appellant's illustration. *Page 1